**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
District Judge Christine M. Arguello**

Civil Action No. 18-cv-01924-CMA

JESUS LOYA QUEZADA,

Applicant,

v.

RICK RAEMISCH, Executive Director, Colorado Department of Corrections, and
THE ATTORNEY GENERAL OF THE STATE OF COLORADO,

Respondents.

---

## ORDER DENYING PETITION FOR HABEAS CORPUS

---

The matter before the Court is an Application for a Writ of Habeas Corpus

Pursuant to 28 U.S.C. § 2254 filed *pro se* by Applicant.   *See* ECF No. 1.   The Court

has determined it can resolve the Application without a hearing.   *See* 28 U.S.C.

§ 2254(e)(2); Fed. R. Governing Section 2254 Cases 8(a).

## I. BACKGROUND

Applicant was convicted of one count of possession with intent to distribute more

than one kilogram of cocaine in State of Colorado Criminal Case No. 02-CR-1419 in the

Adams County District Court in Brighton, Colorado.   *See People of the State of Colo. v.

Loya-Quezada*, 14CA1229, 2 (Colo. App. Aug. 17, 2017); Pre-Answer Resp., Ex. C,

ECF No. 8-3 at 7.   In the Colorado Court of Appeals' (CCA's) order affirming

Applicant's conviction, the CCA summarized the underlying facts of the criminal case as follows:

> In 2002, R.M., a confidential informant (CI) for the North Metro Task Force, met Loya-Quezada at a Kmart parking lot. According to R.M., Loya-Quezada offered to sell him one kilogram, or a "kilo," of cocaine. R.M. later met Loya-Quezada at his house, where Loya-Quezada showed him the drugs and offered to sell the kilo, less a small amount he had already sold, for $17,500. R.M. told Loya-Quezada he needed to get money for the buy, then left the house and called his police handler, Detective Jorge Villegas, to report the exchange. Detective Villegas personally drove to Loya-Quezada's residence to make observations for his affidavit to obtain a search warrant. Based on the affidavit, the magistrate granted the request to issue the search warrant.
>
> Police officers executed the search warrant on Loya-Quezada's home and found 944 grams of cocaine in a black Ford F-150 pickup truck parked in the driveway. Loya-Quezada's fingerprints were on the packaging of the cocaine. Police officers then arrested Loya-Quezada, who later told police officers that a friend had left the drugs in his truck to pick up later.

*Loya-Quezada*, No. 14CA1229 at 1-2; ECF No. 8-3 at 7-8.

Applicant filed the 28 U.S.C. § 2254 Application on July 30, 2018. On July 31, 2018, the magistrate judge directed Respondents to file a Pre-Answer Response and to address the affirmative defenses of timeliness under 28 U.S.C. § 2254(d), and exhaustion of state court remedies under 28 U.S.C. § 2254(b)(1)(A), if Respondents intended to raise either or both in this action. Respondents filed a Pre-Answer Response, ECF No. 8, on August 23, 2018. Applicant filed a statement, ECF No. 13, on October 1, 2018, that was construed as a Reply to the Pre-Answer Response.

Senior Judge Lewis T. Babcock reviewed the Pre-Answer Response and the Reply and filed an Order for Answer on December 20, 2018. *See* ECF No. 14. In the December 20 Order, the Court determined that Applicant's two claims should be drawn

to a presiding judge and when applicable to a magistrate judge for a review on the merits. *Id.* at 10. Respondents were directed to file an answer in compliance with Rule 5 of the Rules Governing Section 2254 Cases that fully addresses the merits of Claims One and Two, which they did January 22, 2019. *See* ECF No. 15. Applicant failed to reply to the Answer within the time allowed. On March 21, 2019, Applicant filed a Letter, ECF No. 17, in which he asks about the status of the Court's decision and generally challenges the errors in his state criminal case.

After reviewing the Application, ECF No. 1, the Answer, ECF No. 15, the Letter, ECF No. 17, and the state court record, ECF No. 16, the Court concludes, for the following reasons, that the Application should be denied and the case dismissed with prejudice.

## II. HABEAS CLAIMS

The claims for review on the merits are as follows:

> 1) There was no nexus between the alleged criminal activity and the search that was conducted, which violated Applicant's Fourth Amendment rights; and
>
> 2) A fingerprint card was admitted without proper foundation, which violated Applicant's rights to confrontation under the state and federal constitutions.

ECF No. 1 at 4-5.

## III. LEGAL STANDARDS

Section 2254(d) provides that a writ of habeas corpus may not be issued with respect to any claim that was adjudicated on the merits in state court, unless the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The Court reviews claims of legal error and mixed questions of law and fact pursuant to 28 U.S.C. § 2254(d)(1). *See Cook v. McKune*, 323 F.3d 825, 830 (10th Cir. 2003). The threshold question pursuant to § 2254(d)(1) is whether Applicant seeks to apply a rule of law that was clearly established by the Supreme Court at the time his conviction became final. *See Williams v. Taylor*, 529 U.S. 362, 390 (2000). The "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the prisoner's claim on the merits." *Cullen v. Pinholster*, 563 U.S.170, 181 (2011). "Finality occurs when direct state appeals have been exhausted and a petition for writ of certiorari from this Court has become time barred or has been disposed of." *Greene v. Fisher*, 565 U. S. 34, 39 (2011) (citing *Griffith v. Kentucky*, 479 U.S. 314, 321, n.6 (1987).

Clearly established federal law "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams*, 529 U.S. at 412. Furthermore,

> clearly established law consists of Supreme Court holdings in cases where the facts are at least closely-related or similar to the case *sub judice*. Although the legal rule at issue need not have had its genesis in

the closely-related or similar factual context, the Supreme Court must
have expressly extended the legal rule to that context.

*House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008).

If there is no clearly established federal law, that is the end of the Court's inquiry

pursuant to § 2254(d)(1).    *See id.* at 1018.    If a clearly established rule of federal law is

implicated, the Court must determine whether the state court's decision was contrary to

or an unreasonable application of that clearly established rule of federal law.    *See*

*Williams*, 529 U.S. at 404-05.

> A state-court decision is contrary to clearly established federal law if: (a)
> "the state court applies a rule that contradicts the governing law set forth
> in Supreme Court cases"; or (b) "the state court confronts a set of facts
> that are materially indistinguishable from a decision of the Supreme Court
> and nevertheless arrives at a result different from [that] precedent."
> *Maynard* [*v. Boone*], 468 F.3d [665,] 669 [(10th Cir. 2006)] (internal
> quotation marks and brackets omitted) (quoting *Williams*, 529 U.S. at
> 405).    "The word 'contrary' is commonly understood to mean
> 'diametrically different,' 'opposite in character or nature,' or 'mutually
> opposed.' "    *Williams*, 529 U.S. at 405 (citation omitted).

> A state court decision involves an unreasonable application of clearly
> established federal law when it identifies the correct governing legal rule
> from Supreme Court cases, but unreasonably applies it to the facts.    *Id.* at
> 407-08.    Additionally, we have recognized that an unreasonable
> application may occur if the state court either unreasonably extends, or
> unreasonably refuses to extend, a legal principle from Supreme Court
> precedent to a new context where it should apply.    *Carter* [*v. Ward*], 347
> F3d. [860,] 864 [10th Cir. 2003] (quoting *Valdez* [*v. Ward*, 219 F.3d [1222]
> 1229-30 [10th Cir. 2000]).

*House,* 527 F.3d at 1018.

The Court's inquiry pursuant to the "unreasonable application" clause is an

objective one.    *See Williams*, 529 U.S. at 409-10.    "[A] federal habeas court may not

issue the writ simply because that court concludes in its independent judgment that the

relevant state-court decision applied clearly established federal law erroneously or incorrectly.   Rather that application must also be unreasonable."   *Id.* at 411.   "[A] decision is 'objectively unreasonable' when most reasonable jurists exercising their independent judgment would conclude the state court misapplied Supreme Court law." *Maynard*, 468 F.3d at 671.   In addition,

> [E]valuating whether a rule application was unreasonable requires considering the rule's specificity.   The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations. [I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court.

*Harrington v. Richter*, 562 U.S. 86, 101 (2011) (internal quotation marks and citation omitted).   The Court "must determine what arguments or theories supported or, . . . could have supported, the state court's decision" and then "it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court."   *Id.* at 102. "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable."   *Id.* (citation omitted).   "Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal."   *Id.* at 102-03 (internal quotation marks and citation omitted).

Under this standard, "only the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254."   *Maynard*, 468 F.3d at 671. Furthermore,

> [a]s a condition for obtaining habeas corpus relief from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Richter*, 562 U.S. at 103.

The Court reviews claims of factual errors pursuant to 28 U.S.C. § 2254(d)(2). *See Romano v. Gibson*, 278 F.3d 1145, 1154 n.4 (10th Cir. 2002). Section 2254(d)(2) allows a court to grant a writ of habeas corpus only if the state court decision was based on an unreasonable determination of the facts in light of the evidence presented. Pursuant to § 2254(e)(1), the Court must presume that the state court's factual determinations are correct, *see Sumner v. Mata*, 455 U.S. 591, 592-93 (1982), and Applicant bears the burden of rebutting the presumption by clear and convincing evidence, *see Houchin v. Zavaras*, 107 F.3d 1465, 1470 (10th Cir. 1997). "The standard is demanding but not insatiable . . . [because] '[d]eference does not by definition preclude relief.' " *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)).

A claim, however, may be adjudicated on the merits in state court even in the absence of a statement of reasons by the state court for rejecting the claim. *Richter*, 562 U.S. at 98. ("[D]etermining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning."). Furthermore, "[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may

be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Id.* at 99.

In other words, the Court "owe[s] deference to the state court's result, even if its reasoning is not expressly stated." *Aycox v. Lytle*, 196 F.3d 1174, 1177 (10th Cir. 1999). Therefore, the Court "must uphold the state court's summary decision unless [its] independent review of the record and pertinent federal law persuades [it] that [the] result contravenes or unreasonably applies clearly established federal law, or is based on an unreasonable determination of the facts in light of the evidence presented." *Id.* at 1178. "This 'independent review' should be distinguished from a full de novo review of the [applicant's] claims." *Id.* (citation omitted).

Likewise, the Court applies the AEDPA (Antiterrorism and Effective Death Penalty Act) deferential standard of review when a state court adjudicates a federal issue relying solely on a state standard that is at least as favorable to the applicant as the federal standard. *See Harris v. Poppell*, 411 F.3d 1189, 1196 (10th Cir. 2005). If a claim was not adjudicated on the merits in state court, and if the claim also is not procedurally barred, the Court must review the claim *de novo* and the deferential standards of § 2254(d) do not apply. *See Gipson v. Jordan*, 376 F.3d 1193, 1196 (10th Cir. 2004).

## IV. ANALYSIS

A. Claim One-Fourth Amendment Violation/No Nexus Between Crime and Search

The CCA addressed this claim as follows:

> The United States and Colorado Constitutions prohibit the issuance of a search warrant except upon a showing of probable cause supported

by oath or affirmation particularly describing the place to be searched and the things to be seized.   U.S. Const. amends. IV, XIV; Colo. Const. art. II, § 7.   Probable cause must be established within the four corners of the affidavit in support of a search warrant.   *People v. Randolph*, 4 P.3d 477, 481 (Colo. 2000).

A probable cause determination "does not lend itself to mathematical certainties and should not be laden with hypertechnical interpretations or rigid legal rules."   *People v. Kazmierski*, 25 P.3d 1207, 1211 (Colo. 2001) (quoting *People v. Altman*, 960 P.2d 1164, 1167 (Colo. 1998)).   Rather, the inquiry "focuses on whether the affidavit establishes a fair probability that officers executing the warrant will find contraband or evidence of crime at the location to be searched."   *Id.* (citing *People v. Hakel*, 870 P.2d 1224, 1228 (Colo. 1994)).

As part of that inquiry, the affidavit must supply a sufficient nexus between the criminal activity, the things to be seized, and the place to be searched.   *Id.*   An affidavit containing only vague allegations that a defendant engaged in illegal activity without establishing a nexus between the alleged criminal activity and place to be searched cannot establish probable cause.   *Id.* (citing *Randolph*, 4 P.3d at 482).

In *People v. Juarez*, 770 P.2d 1286, 1292 (Colo. 1989), the Colorado Supreme Court reviewed whether an affidavit underlying a search warrant contained probable cause to justify the search of a van parked in the driveway of a residence.   The court concluded that it did because the presence of marijuana in the kitchen, bedroom, and garage of the residence, as well as in a vehicle parked in the garage, would lead a person of reasonable caution to believe that contraband would be found on the premises.   *Id.*   It noted that "[p]robable cause 'may arise out of the type of crime, the nature of the missing items, the extent of the suspect's opportunity for concealment and normal inferences as to where a criminal might likely hide the items.' "   *Id.* (quoting *Beeler v. Oklahoma*, 677 P.2d 653, 657-58 (Okla. Crim. App. 1984)).

C.   Analysis

We conclude that the court properly denied Loya-Quezada's suppression motion.

The court found that the personal observations of Detective Villegas, as stated in the affidavit, included a description of the property as well as the black Ford F-150 in the driveway of the house that contained

the kitchen where Loya-Quezada had shown R.M. the package of cocaine.

Loya-Quezada contends that the search of his truck was invalid because the affidavit did not establish a nexus between the criminal activity alleged and the place searched. He bases this contention on evidence that R.M. negotiated to buy the cocaine only in the kitchen of Loya-Quezada's home and did not discuss the truck.

However, even though the warrant described R.M. seeing the drugs in the kitchen, the observation of drugs in Loya-Quezada's house would lead a person of reasonable caution to believe that a fair probability existed that the contraband would be found on the premises, including the curtilage of the home, which would include the truck parked in the driveway. *See id.*

Further, R.M.'s observations were not mere vague allegations of criminal activity. Instead, R.M.'s report relayed alleged facts "sufficient to cause 'a person of reasonable caution to believe that contraband or evidence of criminal activity is located at the place to be searched.' " *Kazmierski*, 25 P.3d at 1211 (quoting *People v. Quintana*, 785 P.2d 934, 937 (Colo. 1990)). The affidavit, by mentioning the truck in the driveway of the residence where the cocaine was last seen, thus alleged facts sufficient to support police officers' reasonable belief that the cocaine could be found there.

The supreme court's analysis on the scope of a search warrant further supports our analysis. In *People v. Webb*, 2014 CO 36, ¶ 12, 325 P.3d 566, 569, the supreme court held that "[a]fter a valid warrant is issued, when searching the specified premises, the police may search areas 'under the control' of the persons whose actions formed the basis for the probable cause determination." Further, "[a] search warrant authorizing a search of a certain premises generally includes any vehicles located within its curtilage if the objects of the search might be located therein." *United States v. Gottschalk*, 915 F.2d 1459, 1461 (10th Cir. 1990).

Accordingly, we conclude that the court did not err in denying the suppression motion.

*Loya-Quezada*, No. 14CA1229 at 4-8; ECF No. 8-3 at 10-14.

"[W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone v. Powell,* 428 U.S. 465, 494 (1976) (footnotes omitted); *see also Miranda v. Cooper*, 967 F.2d 392, 401 (10th Cir. 1992).

The Tenth Circuit has determined that the meaning of the phrase,

[o]pportunity for full and fair consideration includes, but is not limited to, the procedural opportunity to raise or otherwise present a Fourth Amendment claim. It also includes the full and fair evidentiary hearing contemplated by *Townsend [v. Sain*, 372 U.S. 293 (1963), *overruled in part on other grounds by Keeney v. Tamayo*, 504 U.S. 1 (1992)]. Furthermore, it contemplates recognition and at least colorable application of the correct Fourth Amendment constitutional standards.

*Gamble v. State of Okla.*, 583 F.2d 1161, 1165 (10th Cir. 1978) (internal quotation marks omitted).

Applicant fails to demonstrate the absence of a procedural opportunity to litigate his Fourth Amendment claim in state court. In fact, the record demonstrates Applicant took full advantage of the procedural opportunity to litigate his Fourth Amendment claim in a suppression hearing. *See* Case No. 02-CR-1419, Jan. 31, 2014 Hr'g at 3-14. Applicant does not identify anything in the hearing transcripts that is contrary to the court's factual findings. Furthermore, the trial court relied on state and federal law in determining that the search and seizure did not violate the Fourth Amendment. *Id.* The record before the Court demonstrates, *see* Case No. 02-CR-1419, Court Flat File, Feb. 18, 2014 Ord. at 162-64, that the trial court thoughtfully considered and applied appropriate Supreme Court precedent to conclude the motion to suppress properly was

denied.  *See Smallwood v. Gibson*, 191 F.3d 1257, 1265 (10th Cir. 1999).  The trial court (1) noted that Applicant stipulated to the ownership of the truck, which was searched; (2) analyzed the sufficiency of the warrant based on time, crime, objects, and place; (3) found the seventy-two hours from when the informant was at Applicant's residence to when he provided the information to law enforcement was not long enough to constitute stale information; (4) determined the affidavit contained sufficient details regarding the veracity and reliability of the confidential informant; and (5) the affiant who submitted the application and affidavit for search warrant had seen Applicant's vehicle in the driveway.  Feb. 18, 2014 Ord. at 162-64.

Disagreement with the state courts' resolution of a Fourth Amendment claim is not enough to overcome the bar in *Stone*.  *See Matthews v. Workman*, 577 F.3d 1175, 1194 (10th Cir. 2009) (rejecting petitioner's argument that state court misapplied Fourth Amendment doctrine in reaching wrong conclusions about probable cause because that was not the proper question under *Stone*); *see also Pickens v. Workman*, 373 F. App' x 847, 850 (10th Cir. 2010) (stating that "[t]he opportunity for full and fair litigation is not defeated merely because a participant might prefer a different outcome").  Thus, consideration of the merits of Claim One is barred by *Stone*.

B. Claim Two-Fingerprint Card was Admitted without Proper Foundation

The CCA addressed this claim as follows:

> As relevant here, Loya-Quezada contends that the trial court erred in admitting People's Exhibit 8, which purported to be Loya-Quezada's fingerprints, because the People did not lay sufficient evidence of foundation.  We agree; however, we conclude that such error was harmless.  We also reject Loya-Quezada's contention that the admission of the fingerprint card violated his right to confrontation under the state

and federal constitutions, an issue which he raises for the first time on appeal.

At trial, the People offered the testimony of Monica Kent, a fingerprint examiner with the Colorado Bureau of Investigation.  Kent testified that she had compared the fingerprints·on the cocaine packaging to those on a fingerprint card with Loya-Quezada's name, birthdate, and other personal details on it.  Defense counsel objected to Kent's testimony due to lack of foundation.  The People responded, "she has testified that she used this card in her analysis; she's going through the process that she did in her examination."  Defense counsel replied that the evidence still lacked a proper foundation because Kent was not present when the fingerprint card was made.  Overruling the objection, the court admitted the fingerprint card as People's Exhibit 8.  Kent then testified that Loya-Quezada's fingerprints were on the packaging of the cocaine found in his truck.

Later, an officer testified that he had transported Loya-Quezada to the Brighton Police Department.  The officer testified that, at the police station, Loya-Quezada would have been fingerprinted, and his fingerprint card would have contained his vital information including his "name, height, weight, hair color, color of eyes, social security number," and birthdate.  However, the police officer could not recall if he had fingerprinted Loya-Quezada, nor could he identify any other police officer who had fingerprinted Loya-Quezada.

A.  Standard of Review

Loya-Quezada preserved his contention regarding the lack of foundation of the fingerprint card.  We review preserved evidentiary issues for an abuse of discretion, and any resulting errors will only be overturned if the trial court's decision was arbitrary, unreasonable, or unfair.  *People v. Richardson*, 181 P.3d 340, 347-48 (Colo. App. 2007); *see also People v. Bowers*, 801 P.2d 511, 518-19 (Colo. 1990) ("[T]he trial court's evidentiary ruling will be deemed harmless only if a reviewing court can say with fair assurance that, in light of the entire record at trial, the error did not substantially influence the verdict or impair the fairness of the trial.").

Because the Confrontation Clause argument was not raised in the trial court, we review it for plain error.  Plain error is obvious and substantial error that undermines the fundamental fairness of the trial so as to cast serious doubt on the reliability of the judgment of conviction. *See People v. Penn*, 2016 CO ,¶ 28, 379 P.3d 298, 305.

13

B.   Applicable Law

The Colorado Rules of Evidence set forth several prerequisites to the admission of evidence.   As is relevant here, physical evidence must have a sufficient foundation.   CRE 901.

To establish a sufficient foundation under CRE 901, the threshold requirement for admission of evidence is that the proponent supply sufficient evidence to support a finding that the item is what it purports to be.   CRE 901(a); *Washington v. People*, 158 Colo. 115, 123, 405 P.2d 735, 738-39 (1965).   A witness may provide this information through proper testimony.   CRE 901(b)(l).

Further, under CRE 901(b)(7), public records can be authenticated by evidence showing that the public record "is from the public office where items of this nature are kept."

The connection of physical evidence to a defendant may also be shown by circumstantial evidence.   *United States v. Lopez*, 758 F.2d 1517, 1521 (11th Cir. 1985); *see United States v. Hernandez-Herrer*a, 952 F.2d 342, 344 (10th Cir. 1991) ("[T]he 'identification of physical evidence, and its connection to a particular defendant, may be shown through either circumstantial or testimonial evidence.' ") (citation omitted).

C.   Analysis

We conclude that the trial court erred in admitting the fingerprint card because it lacked a proper foundation and was not authenticated pursuant to CRE 901.   However, admission of the fingerprint card was harmless error because of the overwhelming evidence against Loya-Quezada.

Kent testified that the fingerprints on the package of cocaine matched those on the card.   However, she could not identify who had made the card, where and when it was made, and whether the card presented at trial was the same as the one made during Loya-Quezada's booking.

The People argue that the fingerprint card was self-authenticating. It was "what it purported to be" because it was a public record containing Loya-Quezada's vital information.   However, the People did not present any evidence that the fingerprint card was "from the public office where items of this nature are kept."   CRE 901(b)(7).   The card does not contain Loya-Quezada's signature, nor does it identify who actually took

the fingerprints, or where and when they were taken. Unlike the circumstances here, other divisions of this court have concluded that fingerprint card evidence was properly introduced when it was properly certified or accompanied by "a certificate executed by the appropriate custodian of records." *People v. Warrick*, 284 P.3d 139, 141-42 (Colo. App. 2011); *see also People v. Kyle*, 111 P.3d 491, 505 (Colo. App. 2004) (holding that fingerprint cards "were admissible under CRE 901(b)(7), because they are public records certified by the Arapahoe County Sheriff's Office and the Aurora Police Department"). Here, the People failed to present such a certificate or any comparable evidence that could satisfy the authentication requirements of Rule 901 (b)(7).

As a result, we conclude that that the fingerprint card was inadmissible for lack of proper foundation. Accordingly, the court erred in allowing its admission.

Even though the court erred in admitting the fingerprint card, such error was harmless due to the overwhelming evidence against Loya-Quezada. *See Bartley v. People*, 817 P.2d 1029, 1034 (Colo. 1991). The near-kilo of cocaine found in the truck corroborated R.M.'s testimony that Loya-Quezada had attempted to sell him a little under a kilo of cocaine. Further, Loya-Quezada admitted prior to trial that the truck was his. Also, the People introduced evidence that the truck was registered to him, and his name was embroidered on the dashboard.

In addition, in an interview with police officers before trial, Loya-Quezada admitted that he knew the cocaine was in his car. He told police officers initially that some friends had asked if they could place the drugs in his truck and that he had agreed. He later stated that an individual named "Chava" had put the drugs in his car to get Loya-Quezada in trouble. In the interview, Loya-Quezada claimed that he did not know whether the package contained marijuana or cocaine, yet still identified the package as a "kilo." Given the above evidence, we conclude that any error caused by admitting the fingerprint card did not influence the verdict or impair the fairness of the trial. *See Yusem v. People*, 210 P.3d 458, 469 (Colo. 2009); *Bartley*, 817 P.2d at 1034.

We further conclude that the admission of the fingerprint card did not constitute pain error in violation of Loya-Quezada's right to confrontation. Based on the evidence set forth above, the erroneous admission of the fingerprint does not undermine our confidence in the reliability of the judgment of conviction.

This is especially the case when considering the prosecutor's closing argument. In it she focused on Loya-Quezada's admission that he knew the cocaine was in his truck and that the cocaine in Loya-Quezada's truck corroborated R.M.'s testimony. The prosecutor spent relatively little time discussing the fingerprint testimony. While she argued that Loya-Quezada's prints were on multiple layers of the packaging of the cocaine and that Kent had matched those fingerprints to those of Loya-Quezada, the prosecutor spent little time on this argument in her initial closing argument and in her rebuttal closing argument. Similarly, defense counsel's contention that the fingerprints were invalid composed only a brief portion of her closing argument.

Accordingly, we conclude that the admission of the fingerprint card was harmless error.

Because we have concluded that the admission of the fingerprint card was harmless error, we need not address the alternative arguments regarding the admission of the fingerprint card.

*Loya-Quezada*, No. 14CA1229 at 8-15; ECF No. 8-3 at 14-21.

*i. Admissible Evidence/Fundamentally Unfair Trial*

As a rule, federal habeas corpus relief does not lie to review state law questions about the admissibility of evidence. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). The question is whether, "considered in light of the entire record, its admission resulted in a fundamentally unfair trial." *Knighton v. Mullin*, 293 F.3d 1165, 1171 (10th Cir. 2002) (citing *McGuire*, 502 U.S. at 67-68) (further quotation omitted)). Federal courts may only interfere with state evidentiary rulings when the rulings in question are "so unduly prejudicial that it renders the trial fundamentally unfair . . . ." *See Lott v. Trammell*, 705 F.3d 1167, 1190 (10th Cir. 2013) (quoting *Payne v. Tennessee*, 501 U.S. 808, 825 (1991)); *see also Tucker v. Makowski*, 883 F.2d 877, 881 (10th Cir. 1989) (state court rulings on the admissibility of evidence are not questioned in federal habeas

actions unless they "render the trial so fundamentally unfair as to constitute a denial of federal constitutional rights.") (internal quotations marks and citations omitted).

"[B]ecause a fundamental-fairness analysis is not subject to clearly definable legal elements, when engaged in such an endeavor a federal court must tread gingerly and exercise considerable self-restraint." *Duckett v. Mullin*, 306 F.3d 982, 999 (10th Cir. 2002) (internal quotation marks and citation omitted). The Court's "[i]nquiry into fundamental unfairness requires examination of the entire proceedings, including the strength of the evidence against the petitioner." *Le v. Mullin*, 311 F.3d 1002, 1013 (10th Cir. 2002) (per curiam).

"Trial error 'occur[s] during the presentation of the case to the jury,' and is amenable to harmless-error analysis because it 'may . . . be quantitatively assessed in the context of other evidence presented in order to determine [the effect it had on the trial.' " *Brecht v. Abrahamson*, 507 U.S. 619, 629 (1993) (quoting *Arizona v. Fulminante*, 499 U.S. 279, 307-08 (1991). "Unless the error is a structural defect in the trial that defies harmless error analysis, [the Court] must apply the harmless error standard of [*Brecht*] . . . ." *Bland v. Sirmons*, 459 F.3d 999, 1009 (10th Cir. 2006); *see also Davis v. Ayala*, 135 S. Ct. 2187, 2197 (2015) ("For reasons of finality, comity, and federalism, habeas [applicants] are not entitled to habeas relief based on trial error unless they can establish that it resulted in actual prejudice.") (internal quotation marks and citations omitted); *Fry v. Pliler,* 551 U.S. 112, 121-22 (1998) (providing that a federal court must conduct harmless error analysis under *Brecht* anytime it finds

constitutional error in a state court proceeding regardless of whether the state court found error or conducted harmless error review).

A constitutional error does not warrant habeas relief unless the Court concludes it "had substantial and injurious effect" on the jury's verdict. *Brecht*, 507 U.S. at 637. "A 'substantial and injurious effect' exists when the court finds itself in 'grave doubt' about the effect of the error on the jury's verdict." *Bland*, 459 F.3d at 1009 (quoting *O'Neal v. McAninch*, 513 U.S. 432, 435 (1995)). "Grave doubt" exists when "the matter is so evenly balanced that [the Court is] in virtual equipoise as to the harmlessness of the error." *O'Neal*, 513 U.S. at 435.

The admission of the fingerprint card was harmless beyond a doubt because the prosecution presented evidence that (1) almost a kilo of cocaine was found in Applicant's truck, which corroborated R.M.'s testimony that Applicant had tried to sell him a little under a kilo of cocaine; (2) Applicant admitted prior to trial the truck was his and the cocaine was in the truck; (3) evidence was introduced that the truck was registered to him; (4) his name was embroidered on the dashboard; (5) Applicant first told the police that he allowed friends to put the drugs in his truck but later stated an individual put the drugs in his truck to get him in trouble; and (6) Applicant identified the package as a "kilo" even though he claimed he did not know if the package contained marijuana or cocaine. Given the above evidence, the Court concludes that any error caused by admitting the fingerprint card was not so unduly prejudicial that it rendered the trial fundamentally unfair, *see Lott*, 705 F.3d at 1190, or had a substantial and injurious effect on the jury's verdict, *Brecht*, 507 U.S. at 637.

*ii. Confrontation Clause/Plain Error*

Because Applicant failed to raise a confrontation clause objection at trial, the Colorado Court of Appeals reviewed the claim for plain error.

Colorado's plain error test is rooted in due process. *See People v. Kruse*, 839 P.2d 1, 3 (Colo.1992) ("Plain error occurs when . . . the error so undermined the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction.") (internal quotation marks and citation omitted). Because there is no practical distinction between Colorado's plain error test and the federal due process test that requires reversal when error "so infused the trial with unfairness as to deny due process of law," *Estelle*, 502 U.S. at 75 (internal quotation marks and citation omitted), the deferential standard of review applies unless the CCA unreasonably applied federal due process law, *see Thornburg v. Mullin*, 422 F.3d 1113, 1124-25 (10th Cir. 2005) (citing 28 U.S.C. § 2254(d)).

Where a state court assumes a constitutional violation in order to address whether the defendant was actually harmed by the violation, the state court's decision is a merits-based determination entitled to AEDPA deference. *See Davis*, 135 S. Ct. at 2198 (2015); *Littlejohn v. Trammell*, 704 F.3d 817, 850 n.17 (10th Cir. 2013). On direct review, a federal constitutional error in conjunction with a state criminal conviction requires reversal if "there is a reasonable possibility that the [error] might have contributed to the conviction." *Chapman v. California*¸386 U.S. 18, 24 (1967) (internal citation and quotation marks omitted). However, on federal habeas review, if the state appellate court found an alleged federal constitutional error harmless under the federal

standard in *Chapman*, "a federal court may not award habeas relief under § 2254 unless the harmlessness determination itself was unreasonable." *Davis*, 135 S. Ct. at 2199 (quoting *Fry*, 551 U.S. at 119.

The Court considers the following factors in determining whether a Confrontation Clause error was harmless: (1) the importance of the witness's testimony in the prosecution's case; (2) whether the testimony was cumulative; (3) the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points; and (4) the extent of cross-examination permitted, and (5) the overall strength of the prosecution's case. *See Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986). *See also Littlejohn*, 704 F.3d at 845 (citing *Van Arsdall* factors relevant to harmless error analysis).

A review of the *Van Arsdall* factors shows that only the first factor, the importance of the witness's testimony may weigh in favor of Applicant. The fingerprint examiner, who was with the Colorado Bureau of Investigation testified that she had compared the fingerprints·on the cocaine packaging to those on a fingerprint card that contained Applicant's name, birthdate, and other personal details. Case No. 02-CR-1419, May 6, 2014 Trial Tr. at 19-31. Nonetheless, the remaining factors do not weigh in the Applicant's favor. The defense was able to challenge the foundation of the card, *id.* at 20, there was no cumulative testimony, and the evidence against Applicant was overwhelming. Therefore, it is "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Chapman*, 386 U.S. at 24.

The Colorado Court of Appeals' decision that any error was harmless was not contrary to, or an objectively unreasonable application of, clearly established federal law as set forth in *Chapman*.

Even if the state court's decision was contrary to or an unreasonable application of clearly established federal law, any error was harmless under *Brecht*. While under *Chapman* an error is harmless on direct appeal if it appears "beyond a reasonable doubt that the alleged error did not contribute to the verdict obtained," *Chapman*, 386 U.S. at 24, the "higher threshold" set forth in *Brecht* "must be satisfied for a state prisoner to obtain postconviction relief in federal court." *Malone v. Carpenter*, 911 F.3d 1022, 1029 (10th Cir. 2018). Under *Brecht*, habeas relief is warranted only if the constitutional error "had substantial and injurious effect" on the verdict. *Brecht*, 507 U.S. at 637. Based on the evidence presented against Applicant at trial, the Court cannot conclude that any error regarding admission of the fingerprints evidence had a substantial and injurious effect on the jury's verdict. Therefore, Applicant is not entitled to relief under section 2254(d)(1) with respect to his Confrontation claims.

*iii. Conclusion*

Applicant has failed to present clear and convincing evidence that the admission of the fingerprint card so undermined the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction. The CCA's decision regarding Claim Two is not contrary to or an unreasonable application of clearly established rule of federal law or an unreasonable determination of the facts in light of

the evidence presented to the state court.   This claim, therefore, lacks merit and will be dismissed.

## V. ORDERS

Based on the above findings, it is

ORDERED that the Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254, ECF No. 1, is DISMISSED WITH PREJUDICE.   It is

FURTHER ORDERED that the issuance of a Certificate of Appealability pursuant to 28 U.S.C. § 2253(a) is denied.   Applicant has not made a substantial showing of the denial of a constitutional right such that reasonable jurists could disagree as to the disposition of her petition pursuant to the standards of *Slack v. McDaniel,* 529 U.S. 473, 484 (2000).   *See* 28 U.S.C. § 2253(c)(2).   It is

FURTHER ORDERED that leave to proceed *in forma pauperis* on appeal is denied.   The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order is not taken in good faith, and, therefore, *in forma pauperis* status is denied for the purpose of appeal.   *See Coppedge v. United States*, 369 U.S. 438 (1962).   If Applicant files a notice of appeal he must also pay the full $505 appellate filing fee or file a motion to proceed *in forma pauperis* in the United States Court of Appeals for the Tenth Circuit within thirty days in accordance with Fed. R. App. P. 24.

DATED:   April 3, 2019

BY THE COURT:

CHRISTINE M. ARGUELLO
United States District Judge